IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWIN ROY SHOWALTER,** | : | **CIVIL ACTION NO. 1:20-CV-570** |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, ATTORNEY GENERAL OF PENNSYLVANIA, YORK COUNTY DISTRICT ATTORNEY,** | : : : : : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Edwin Roy Showalter ("Showalter") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), seeking relief from a sentence of 9 to 23 months' imprisonment entered in the Court of Common Pleas of York County, Pennsylvania, on September 1, 2016, in criminal case CP-67-CR-0003661-2015, following his July 12, 2016 conviction for simple assault and disorderly conduct. The petition is ripe for disposition. For the reasons set forth below, the court will deny the petition.

**I.  State Court Factual & Procedural Background**

The Superior Court of Pennsylvania set forth the following facts relevant to the charges lodged against Showalter:

> On April 19, 2015, Showalter entered Harbor Freight in York County to return an item he had purchased. A dispute arose as to the amount of the refund. Stephany Nicholson, a cashier at the store, testified that Showalter then left the store, but he returned shortly after that dispute to make a purchase. This time, however, Showalter was shouting, and Nicholson noticed he was agitated and invading her "personal space."

> N.T. Jury Trial, 7/12/16, at 93. Showalter left the store again, and returned a third time, just before closing time. Nicholson testified that Showalter was "trying to come behind the registers with his fists balled and made [the employees] feel threatened[.]" Id. at 83-84. Nicholson testified Showalter was acting combative, and this time he lifted his shirt and exposed a handgun, which was tucked inside his waistband. Another store clerk, Elizabeth Spells, testified that at the time Showalter lifted up his shirt he said something to the effect of, "[T][]his is what I can do to you." Id. at 94. Showalter then left the store.
>
> A customer, Rick Becker, asked Showalter if he had just shown the store clerks a gun, to which Showalter replied, "I was just trying to scare them." Id. at 95. Showalter then left in his car, but not before Becker took down the license plate number and called the police. Officer Daniel Klinedinst of the Springettsbury Township Police Department contacted Showalter later that evening. Showalter explained to Officer Klinedinst what had occurred at the store, and stated that he did in fact display the firearm to the store clerks. Showalter consented to a search of his vehicle, where the handgun in question was located.

Commonwealth v. Showalter, 2017 WL 3710996, at *1 (Pa. Super. Aug. 29, 2017).

As a result, Showalter was charged with two counts of simple assault, two counts of harassment, and one count of disorderly conduct. See id. Throughout his pretrial proceedings, Showalter repeatedly indicated a willingness to proceed *pro se*. On December 17, 2015, a pretrial conference was held, and Showalter expressed a desire to have his attorney removed as counsel and to represent himself. The following exchange occurred during the pretrial conference:

> [THE COMMONWEALTH]: Next before the Court Commonwealth of Pennsylvania versus Edwin Showalter 3661, 2015. He is present represented by Attorney Bellfy. I believe, however, at this point Mr. Showalter has indicated that he wishes to fire Attorney Bellfy and proceed *pro se* is my understanding.
>
> THE COURT: Mr. Showalter, is that the case?
>
> THE DEFENDANT: That's correct.

(Doc. 8-1 at 21-22, Pretrial Conference Hearing Transcript, Dec. 17, 2015).  Later in the conference, the court again asked Showalter if he wished to represent himself. (Id. at 26-27).  Showalter refused to answer the questions and instead challenged the court's jurisdiction over him.  (Id. at 23-27).  Because the judge was unable to obtain a definitive answer from Showalter, the judge advised Showalter that Attorney Bellfy would continue to represent him.  (Id. at 26-27).  The court also advised Showalter of the nature of the charges against him:

> THE COURT:  I will read the charges to you.  You are charged with one count of simple assault in which you attempted by physical menace to put a Stephany Nicholson in fear of imminent serious bodily injury by displaying a firearm.  Count 2, simple assault, same allegation only as it relates to Elizabeth Spells.  Count 3, harassment, it alleges that you intended to harass, annoy or alarm another person; namely, a Stephany Nicholson, or engaged in a course of conduct or repeatedly commits acts which alarm or seriously annoy that other person and which served no legitimate purpose, and that you displayed a firearm or engaged in a dispute with her.  Count 4, harassment, same allegation with regard to Elizabeth Spells.  Count 5, disorderly conduct, that you engaged in conduct which caused or recklessly created a risk of causing public inconvenience, annoyance or alarm and which served no legitimate purpose.  Now, what other questions do you have?
>
> THE DEFENDANT:  How—
>
> THE COURT:  If you need anymore—I will tell you this.  If you need anymore information about the nature of the charges, then you should file what's called a request for Bill of Particulars.  That would have to be served—actually you are beyond the time period for serving that.  I don't know if the Commonwealth would honor that request or not if you filed it.
>
> THE DEFENDANT:  Yes, according to the Constitution of the United States and the Sixth Amendment, it is my right to be able to ask of the nature and intents of the charges.
>
> THE COURT:  You did, and I answered you.  Next question.

(Id. at 24).

Prior to proceeding to trial, the trial court held a hearing on defense counsel's motion to withdraw as counsel and conducted the following colloquy on the issue of waiver of counsel:

> THE COURT: All right. Now, Mr. Showalter. . . Apparently you want to represent yourself, is that correct?
>
> THE DEFENDANT: Yes. With my—with the 6th Amendment, I am still grateful for the assistance of counsel for my defense, but the Public Defender have just been going along with the Court and haven't been representing a defense.
>
> THE COURT: All right.
>
> THE DEFENDANT: So I need assistance of counsel for my defense rather than somebody just goes along with the charges because this— these false charges should have never come this far.
>
> THE COURT: All right. Well, you have two choices at this point. If you want an attorney and you can't afford an attorney, then the Public Defender would represent you free of charge, or you can certainly hire your own attorney if you wish to do that. You certainly have the right to be represented by counsel of choice. If you can afford to hire counsel, then that would be the way to go. Otherwise, the Public Defender is here to represent your interests, or you can represent yourself. That's the third choice that you have. . .
>
> . . .
>
> THE COURT: All right. You have to understand that as standby counsel, they will not do anything unless you ask them to do a question—unless you ask them a question or to do something in particular. Do you understand that?
>
> THE DEFENDANT: That sounds like a good plan.
>
> THE COURT: They will not give you any advice unless you ask for it. Do you understand that?
>
> THE DEFENDANT: I understand.

4

. . .

THE COURT: Mr. Showalter . . . I am asking you, do you understand that if you represent yourself, you are going to be bound by the same rules of evidence, rules of procedure, and the same law that an attorney would be bound by if you represent yourself? Do you understand that?

THE DEFENDANT: I don't even understand how things got to this point to start from.

THE COURT: I didn't ask you that.

THE DEFENDANT: How this should even be an issue.

THE COURT: Mr. Showalter, answer my question, please. Do you understand if you represent yourself, you are going to be bound by the same rules of law, the same evidence, rules of evidence, the same rules of procedure that an attorney would be bound by? Can you just answer that question for me? Do you understand what I just told you?

THE DEFENDANT: Could you explain to me what those rules are?

THE COURT: Well, it depends on what the situation is with the case. The rules of law are the laws that you are charged with. The rules of procedure the procedures by which we conduct a trial. The rules of evidence would be the procedure by which items are introduced either against you or on your behalf during the course of the trial. Do you understand that?

THE DEFENDANT: The jurisdiction of this Court and how it has the jurisdiction over me has never been shown—

THE COURT: Mr. Showalter—

THE DEFENDANT: —to show why—

THE COURT: —I am not talking about jurisdiction.

THE DEFENDANT: Yes.

THE COURT: Why can't you answer my question? Do you understand what I just told you about being bound by the same rules of law, the rules of procedure, and rules of evidence if you represent yourself?

THE DEFENDANT:  Unless this Court has jurisdiction over me, I shouldn't even need to be here.

THE COURT:  Al1 right.  Well, just listen to me, Mr. Showalter.  I will advise you of your rights.  You understand that I won't be able to assist you in presenting your case if you decide to represent yourself, that you are on your own representing yourself?  That means you have to conduct your own cross examination of witnesses, your own opening statement, your own jury selection, your own examination of your own witnesses, and your own presentation of your case if you decide to present a case.

Additionally, if anything has to be objected to during the course of the trial or any defense has to be raised during the course of the trial, during the course of these proceedings, and you do not raise it in a timely fashion, then you may give up your right to raise those issues at a later time.  So that means if during the course of the trial you object to something, something comes up that should be objected to, you have the obligation of objecting to it in a timely manner.

If a defense has to be raised at a particular point in time, you have the obligation of raising it at that particular point in time.  Otherwise, you waive those issues for further review.  In other words, you will not be able to raise those issues on an appeal and say, hey, I should have raised those issues back then but I didn't know any better.

Additionally, you would be responsible for cross-examining your own witnesses and presenting your own case and examining your own witnesses during the course of your trial.

Finally, you would be responsible for representing yourself during sentencing if you should be convicted of anything during the course of sentencing -- or during the course of the trial.  You are giving up the advantage of having an attorney be able to cross-examine witnesses, present your own defense, present your own witnesses, raise legal issues as they may arise during the course of the trial, and you are also giving up your right to have your attorney speak for you during opening statements, closing arguments, and raise issues, if appropriate, during sentencing if it should get that far.

Do you understand that those are the issues that you are going to be faced with with representing yourself, and those are the things you are giving up when you decide not to have an attorney represent you?

. . .

> THE COURT:  Okay.  So do you want to give up your right to an attorney at this point and just have the Public Defender's Office act as standby counsel?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  All right.  Are you under the influence of anything today that would interfere with your ability to understand what is going on here today?
>
> THE DEFENDANT:  No.
> . . .
>
> THE COURT:  Has anyone forced you or threatened you or promised you anything to get you to give up your right to an attorney?
>
> THE DEFENDANT:  No.
>
> THE COURT:   All right. We will find that your right to—that your waiving your right to an attorney is a voluntary, knowing, and intelligent act.  We will grant that request.  We will ask the Public Defender to serve as standby counsel.

(Doc. 8-1 at 34-35, 40-45, 47-48, Withdrawal of Counsel Hearing Transcript, Feb. 23, 2016).

Showalter proceeded to trial *pro se*, with appointed standby counsel present. (Doc. 8-1 at 54-308, Jury Trial Transcript, July 11-12, 2016).  Following trial, the jury convicted Showalter of two counts of simple assault and the court found him guilty of disorderly conduct.  (See id.; see also Commonwealth v. Showalter, No. CP-67-CR-0003661-2015 (York Cty. Ct. Com. Pl.)).  On September 1, 2016, Showalter was sentenced to an aggregate term of 9 to 23 months' imprisonment, followed by 12 months' probation.  (Doc. 8-1 at 309-317, Sentencing Transcript, Sept. 1, 2016). Showalter filed counseled post-sentence motions, which were denied.  (Doc. 8-1 at 319-360, Post-Sentence Motion Hearing Transcript).  On October 27, 2016,

7

Showalter filed a counseled notice of appeal to the Pennsylvania Superior Court. <u>Commonwealth v. Showalter</u>, No. 1805 MDA 2016 (Pa. Super. 2016). On August 29, 2017, the Superior Court affirmed the judgment of sentence. <u>Id.</u>; <u>Showalter</u>, 2017 WL 3710996. Showalter filed a counseled petition for allowance of appeal with the Pennsylvania Supreme Court. <u>Commonwealth v. Showalter</u>, No. 660 MAL 2017 (Pa. 2017). On March 6, 2018, the Pennsylvania Supreme Court denied the petition for allowance of appeal. <u>Id.</u>

On May 21, 2018, Showalter filed a counseled petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA.C.S. §§ 9541-9546. <u>Showalter</u>, No. CP-67-CR-0003661-2015. An amended petition was subsequently filed. <u>Id.</u> On July 31, 2018, the PCRA court held a hearing. (Doc. 8-1 at 446-480, PCRA Hearing Transcript, July 31, 2018). At the conclusion of the hearing, the PCRA court denied Showalter relief under the Post Conviction Relief Act. (Doc. 8-1 at 523, PCRA Court Order dated July 31, 2018). Showalter then filed a counseled notice of appeal with the Pennsylvania Superior Court. <u>Commonwealth v. Showalter</u>, No. 1457 MDA 2018 (Pa. Super. 2018). On April 9, 2019, the Pennsylvania Superior Court affirmed the PCRA court's decision. <u>Showalter</u>, No. 1457 MDA 2018, 2019 WL 1529658. Showalter did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

Showalter filed the instant petition pursuant to 28 U.S.C. § 2254. (Doc. 1).

## II. <u>Habeas Claims Presented for Federal Review</u>

Showalter seeks habeas relief based on the following grounds:

A. Ground One: Ineffective Assistance of Counsel for my defen[s]e according to the Sixth Amendment to the United States Constitution.

B. Ground Two: In violation of the Sixth Amendment to the United States Constitution[,] I was not informed of the nature and cause of the accusation.

(Doc. 1 at 5-8).

## III. <u>Legal Standards</u>

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 68.

### A. **Exhaustion**

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on

9

principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 278 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard, 404 U.S. at 275).

### B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section

2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v.

Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[1]).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

---

[1] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

Showalter's claims were addressed by the state courts on the merits and, therefore, are subject to AEDPA review. "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" Burnside v. Wenerowicz, 525 F. App'x 135, 138 (3d Cir. 2013) (nonprecedential).

## IV. Discussion

The court construes Showalter's claims as raising the following ground for relief: he was denied his Sixth Amendment right to counsel because he did not knowingly, voluntarily, and intelligently waive his right to trial counsel.

The Sixth Amendment guarantees an accused the right to assistance of counsel for his defense. U.S. CONST. amend. VI. A person accused of a crime, however, may choose to forgo representation. Faretta v. California, 422 U.S. 806, 821, 835 (1975) (holding that the right to self-representation is guaranteed by the Sixth Amendment to the United States Constitution when a valid waiver is made). The Faretta Court stated:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not

13

> rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' Illinois v. Allen, 397 U.S. 337, 350-351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring).

Faretta, 422 U.S. at 834. While the Constitution "does not force a lawyer upon a defendant," Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942), it does require that any waiver of the right to counsel be clear and unequivocal and be knowing, voluntary, and intelligent. See Faretta, 422 U.S. at 835; Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

The trial judge has "the serious and weighty responsibility" of determining if a defendant's right to counsel has been waived and prohibits forcing a defendant to trial absent a valid waiver of this Sixth Amendment right. Johnson, 304 U.S. at 465. "The fact that an accused may tell [a judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." Von Moltke v. Gillies, 332 U.S. 708, 724 (1948). "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Id. There is no prescribed formula or script colloquy; the information to be conveyed to the defendant "depend[s], in each case, upon the particular facts and circumstances surrounding that case." Iowa v. Tovar, 541 U.S. 77, 92 (2004) (quoting Johnson, 304 U.S. at 464). "To be valid such waiver must be made with an apprehension of the nature of the

14

charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Von Moltke, 332 U.S. at 724.

Significantly, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." Godinez v. Moran, 509 U.S. 389, 399 (1993) (emphasis in original). The Supreme Court in Godinez further explained that "while '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,'. . . , a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." Id. at 400 (citations omitted).

Consideration of the defendant's best interests is wholly irrelevant to an assessment of whether a criminal defendant has rendered a knowing and intelligent waiver of his right to the assistance of counsel or not. See Faretta, 422 U.S. at 834. "[A] defendant's request to waive the right to counsel and proceed *pro se* cannot be denied because the court believes that the defendant's choice is ill-advised. Such a choice is almost always ill-advised." Alongi v. Ricci, 367 F. App'x 341, 348 (3d Cir. 2010) (nonprecedential).

In reviewing the waiver of counsel colloquy administered to Showalter by the trial court, the Superior Court, on direct review, set forth the following standards of review:

> A criminal defendant's right to counsel under the Sixth Amendment includes the right to waive that right and to represent oneself at criminal proceedings. Faretta v. California, 422 U.S. 806 (1975); see also Commonwealth v. Szuchon, 484 A.2d 1365, 1376-77 (Pa. 1984) (an accused has right to conduct own defense pursuant to Article 1, Section 9 of the Pennsylvania Constitution; in order to validly assert right to self-representation, defendant's waiver of right to counsel must be knowing, intelligent and voluntary). The right to appear *pro se* is guaranteed as long as the defendant understands the nature of his choice. See Faretta, 422 U.S. at 835; see also Commonwealth v. McDonough, 812 A.2d 504, 508 (Pa. 2002) (concluding Faretta requires on-the-record colloquy in satisfaction of Pa.R.Crim.P. 121, which colloquy may be conducted by the court, the prosecutor, or defense counsel.)
>
> Pennsylvania Rule of Criminal Procedure 121 provides the framework and minimum guidelines for the waiver colloquy to ensure that the defendant's waiver is knowing, voluntary and intelligent. See Pa.R.Crim.P. 121(A)(1), (2); see also Commonwealth v. Grazier, 713 A.2d 81, 82 (Pa. 1998). Pursuant to Rule 121, the court must ensure:
>
>> a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>>
>> b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>>
>> c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>>
>> d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure that counsel would be familiar with these rules;
>>
>> e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of,

> and if those defenses are not raised at trial, they may be lost permanently, and
>
> f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.
>
> Pa.R.Crim.P. 121(A)(2).

Showalter, 2017 WL 3710996, at *2-3.

The Superior Court reviewed the record and cited the on-the-record colloquy conducted on February 23, 2016:

> The [trial] court conducted a waiver colloquy, and explained the following to Showalter:
>
> THE COURT: You have to understand that as standby counsel, they will not do anything unless you ask them . . . a question or to do something in particular. Do you understand that?
>
> THE DEFENDANT: That sounds like a good plan.
>
> THE COURT: They will not give you any advice unless you ask for it. Do you understand that?
>
> THE DEFENDANT: I understand.
>
> * * * *
>
> THE COURT: Do you understand if you represent yourself, you are going to be bound by the same rules of law, the same evidence, rules of evidence, the same rules of procedure that an attorney would be bound by? . . . The rules of law are the laws that you are charged with. The rules of procedure are the procedures by which we conduct a trial. The rules of evidence would be the procedure by which items are introduced either against you or on your behalf during the course of the trial. Do you understand that? . . . So do you want to give up your right to an attorney at this point and just have the Public Defender's Office act as standby counsel?

17

    THE DEFENDANT: Yes.

Id. at *3.

    The Superior Court noted that, during the colloquy, Showalter claimed that the charges against him were false and that he did not understand the charges. Id. at *4. The Superior Court was not persuaded by the argument:

> [Showalter's statements do] not establish that he did not understand the nature of the charges against him. Showalter's statements illustrated his mistaken belief that his Second Amendment right to bear arms trumped the Pennsylvania Criminal Code in these circumstances, not his inability to comprehend the charges against him. Further, at the pretrial conference, the court had read Showalter the charges against him, and explained to him that he could request a Bill of Particulars if he needed additional information about the nature of the charges. N.T. Pretrial Conference, 12/17/15, at 4-5. The trial court did acknowledge that it did not state the permissible range of sentences and/or fines for the offenses charged verbatim, see Pa.R.Crim.P. 121(A)(2)(c), but the court ensured that Showalter had access to the guidelines ranges and the maximum sentences applicable to the offenses charged. N.T. Post-Sentence Hearing, 10/24/16, at 5; N.T. Hearing on Motion to Withdraw/Waiver Colloquy, 2/23/16, at 18.

Id.

    The Superior Court reviewed the criteria under Rule 121(a)(2) and "agree[d] with the trial court's assessment that Showalter understood the implications of his decision to represent himself." Id. at *4. The Superior Court noted that the assistant public defender filed the motion to withdraw at Showalter's request and that he was adamant about representing himself. Id. at *3. It noted that the trial judge reminded Showalter that he could secure counsel or allow the court to appoint counsel. Id. It noted that the trial court found that Showalter was not under the influence of anything that would interfere with his ability to understand the waiver, that Showalter was not forced, threatened or promised anything in

18

return for giving up his right to an attorney, and that he was competent to waive the right to counsel. Id. It considered whether the trial court conducted a colloquy that satisfied the requirements that Showalter was aware both of the right to counsel and of the significance and consequences of waiving that right. Id. at *3-4. It noted that, at the pretrial conference, the trial judge presented to Showalter the charges against him. Id. at *4. And, although the trial judge did not state the permissible range of sentences and fines for the offenses, the court ensured that Showalter had access to the guidelines ranges and the maximum sentences. Id. The Superior Court ultimately concluded that Showalter knowingly, intelligently, and voluntarily waived his right to counsel. Id.

The Superior Court's decision concerning the validity of Showalter's waiver of counsel was not contrary to, and did not involve an unreasonable application of, clearly established federal law as established by the Supreme Court. Therefore, the habeas petition will be denied.

## V.     **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Showalter failed to demonstrate that a certificate of appealability should issue.

**VI.   Conclusion**

We will deny the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      November 16, 2021